O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MELODIE MEYER,                    )  Case No. CV 14-05996 DDP (AGRx)
                                  )
                Plaintiff,        )
                                  )  **ORDER GRANTING MOTIONS TO DISMISS**
        v.                        )
                                  )
ONE WEST BANK, F.S.B.,            )
AMERICAN SECURITY INSURANCE       )
COMPANY, PETER MALONEY,           )
Intervenor,                       )
                                  )  [Dkt. Nos. 26, 29]
                Defendants.       )
                                  )
_____    )

    Presently before the court are two separate motions to dismiss
filed by Defendants One West Bank, F.S.B. ("OneWest") and American
Security Insurance Company ("ASIC").  Having considered the
submissions of the parties, the court grants the motions and adopts
the following order.

**I.    Background**

    In January 2007, Plaintiff obtained a mortgage loan that was
eventually acquired by OneWest.  (Complaint ¶ 25.)  The Deed of
Trust securing that loan requires Plaintiff to maintain hazard
insurance, including earthquake and flood insurance.  (Id. ¶ 26.)

The deed also includes a force-placed insurance provision, which reads:

> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. . . . Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section [] shall become additional debt of Borrower secured by this Security Instrument.

(Compl. ¶ 26.)

On March 16, 2012, OneWest force-placed Plaintiff into insurance provided by Defendant ASIC, retroactive to December 16, 2011. (Compl. ¶ 30.) OneWest withdrew premiums for the ASIC policy from Plaintiff's escrow account, then required her to make additional payments to replenish the escrow account. (Id. ¶ 32.) Plaintiff acquired her own insurance on April 13, 2012, apparently to OneWest's satisfaction. (Id. ¶¶ 31-32.) OneWest returned some amount to Plaintiff's escrow account, but retained a portion of the premiums paid between December 16 and April 13 that OneWest deemed itself to have "earned." (Id. ¶ 32.)

Plaintiff alleges, on a behalf of a putative nationwide class, that OneWest colluded with ASIC in a scheme whereby OneWest allowed ASIC to automatically force-place high-cost and backdated insurance for certain OneWest mortgagors and ASIC then "kicked back" a portion of the premiums to OneWest as unearned compensation. (Compl. ¶¶ 5-11.) Plaintiff's Complaint alleges eight causes of action for violations of the Racketeer Influenced Corrupt Organizations Act("RICO"), 18 U.S.C. §§ 1962(c), 1962(d), 1346; breach of fiduciary duty; aiding and abetting breach of fiduciary

duty, breach of contract and the implied covenant of good faith and fair dealing, unjust enrichment; conversion; and violations of California Business & Professions Code § 17200.  Defendants now move to dismiss.[1]

**II.  Legal Standard**

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000).  Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678.  Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." <u>Id.</u> at 679.  In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked

---

[1] Plaintiff filed her complaint in the United States District Court for the Northern District of California.  Soon after, Peter Maloney, the plaintiff in a case then and currently before this court, <u>Maloney v. Indymac Mortgage Services and OneWest Bank, FSB</u>, No. 13-CV-04781 DDP, moved to intervene in this case and transfer this case from the Northern District to this district.  (Dkt. No. 25.)  Defendants then filed and briefed the instant motions to dismiss in the Northern District.  Defendant OneWest also moved to transfer to this court.  The court denied Peter Maloney's motion to intervene and transfer but granted OneWest's motion to transfer, noting that Plaintiff in this case is a putative class member in <u>Maloney</u> and that the issues in the two cases are similar.  (Dkt. 58).

assertions" will not be sufficient to state a claim upon which relief can be granted.  Id. at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Id. at 679.  Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." Twombly, 550 U.S. at 555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**III. Discussion**

    A.   HOLA Preemption of State Law Claims

Defendants contend that Plaintiff's claims are preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 et seq.[2] As explained by this court in the related Maloney case, HOLA granted the Office of Thrift Supervision ("OTS") broad authority to regulate federal savings associations. Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001, 1005 (9th Cir. 2008).  One OTS regulation, 12 CFR § 560.2(a), entitled "Occupation of field," stated that "[p]ursuant to . . . HOLA, OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations . . . .  OTS hereby occupies the

---

[2] Perhaps as a result of page constraints imposed at the time of briefing, OneWest and ASIC raise some, but not all, of the same arguments and Plaintiff discusses certain issues in one opposition while only referencing those arguments in the other.  This order hereinafter refers to Defendants' and Plaintiffs' oppositions collectively for the sake of clarity.

1  entire field of lending regulation for federal savings
2  associations." 12 CFR § 560.2(a). Preempted state laws include
3  those that impose requirements regarding the "[p]rocessing,
4  origination, servicing, sale or purchase of, or investment or
5  participation in, mortgages[.]" 12 CFR § 560.2(b)(10).

6      Plaintiff appears to argue first that HOLA does not preempt
7  her claims because HOLA was repealed on July 21, 2011 by the Dodd-
8  Frank Act, 12. U.S.C. § 1465, and all of the force-placing of
9  insurance at issue here occurred after that date. The Dodd-Frank
10 Act transferred supervisory authority over federal savings
11 associations from the OTS to the Office of the Comptroller of the
12 Currency and provided that HOLA does not occupy the field of
13 lending regulations. See Settle v. World Savings Bank F.S.B., No.
14 ED CV 11-800 MMM; 2012 WL 1026103 at *13 (C.D. Cal. Jan. 11, 2012);
15  12 U.S.C. §§ 5412, 1465.

16     The Dodd-Frank Act is not, however, retroactive. Contracts
17 formed before the Act's effective date are, therefore, subject to
18 the preemption rules applicable at the time of formation. See
19 Aldana v. Bank of America, N.A., No. CV 14-7489-GHK, 2014 WL
20 6750276 at *5 (C.D. Cal. Nov. 26, 2014); Settle, 2012 WL 1026103 at
21 *14; Deschaine v. IndyMac Mortgage Servs., No. CIV. 2:13-1991 WBS,
22 2014 WL 281112 at *8 (E.D. Cal. Jan. 23, 2014). Here, Plaintiff
23 obtained her mortgage in 2007, well before Dodd-Frank took effect,
24 and subject to the HOLA preemption regime of the time.

25     Plaintiff next argues that her claims are not preempted even
26 under HOLA's preemption rules. OTS regulations provided that,
27 notwithstanding field preemption of regulations affecting federal
28 savings associations, state laws, including contract and tort laws,

are not preempted to the extent they "only incidentally affect the lending operations of Federal savings associations."  12 CFR § 560.2(c).  OTS also set out a framework for determining whether a state law claim is preempted under 12 C.F.R. §560.2.  Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1006 (9th Cir. 2008).  Under that framework, "the first step will be to determine whether the type of law in question is listed in [12 C.F.R. §560.2] paragraph (b).  If so, the analysis will end there; the law is preempted."  Id. (quoting OTS, Final Rule, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996).  If paragraph (b) is not applicable, the question then becomes whether the law affects mortgage lending.  Id.  If the law does affect lending, a presumption of preemption can be rebutted only if the law falls under the "incidental effect" exception of paragraph (c).  Id.  The exception is narrow, however, and doubts are resolved in favor of preemption.  Id.

Plaintiff appears to suggest that her claims fall under 12 C.F.R. §560.2(c) because similar claims are not preempted under the National Bank Act ("NBA").  Comparisons to the NBA are inapt, however, as "HOLA preemption is much broader."  Cannon v. Wells Fargo Bank N.A., 917 F.Supp.2d 1025, 1050 (N.D. Cal. 2013); See also Tanburri v. Suntrust Mortgage, Inc., 875 F.Supp.2d 1009, 1019-20 (N.D. Cal. 2012) (explaining distinction between HOLA and "the more lenient NBA conflict preemption standard.").  Plaintiff's reliance on Gibson v. World Savings & Loan Ass'n, 103 Cal.App.4th 1291 (2002) is also unavailing.  Although Plaintiff is correct that Gibson found force-placed insurance claims were not preempted by HOLA, courts in this district and circuit have recognized Gibson as inconsistent with the Ninth Circuit's decision in Silvas and the

6

preemption framework described therein.  <u>See</u>, <u>e.g.</u> <u>Munoz v.</u>
<u>Financial Freedom Senior Funding Corp.</u>, 567 F.Supp.2d 1156, 1162-63
(C.D. Cal. 2008); <u>Hayes v. Wells Fargo Bank, N.A.</u>, No. 13cv1707
L(BLM), 2014 WL 3014906 at *6 (S.D. Cal. July 3, 2014).

     One federal case cited by Plaintiff did conclude that HOLA
does not preempt force-placed insurance claims similar to those at
issue here.  In <u>Dequtis v. Financial Freedom, LLC</u>, 978 F.Supp.2d
1243 (M.D. Fla. 2013), the court identified the HOLA preemption
framework described above and proceeded to apply that framework to
breach of contract and implied convenant claims and deceptive trade
practices claims.  <u>Dequtis</u>, 978 F.Supp.2d at 1252-57.  The court
found the breach of contract claims covered by the preemption
exception in 12 C.F.R. §560.2(c), but did not first opine as to
whether 12 C.F.R. §560.2(b) applied to the claims.  <u>Id.</u> at 1255-56.
The court also concluded that HOLA did not preempt deceptive trade
practices claims, citing an OTS opinion that state deceptive
practices laws, as applied to credit card transactions, had only an
incidental effect on lending.  <u>Id.</u> at 1257.

     Other courts have to come to the opposite conclusion.
"Looking at the specific conduct being charged," the court in
<u>Schilke v. Wachovia Mortgage, FSB</u> ("<u>Schilke II</u>"), 820 F.Supp.2d 825
(N.D. Ill. 2011), found that force-placed insurance claims,
including allegations that a portion of the premium was returned to
the mortgage holder, fell under 12 C.F.R. §560.2(b), and were
therefore preempted.  <u>Schilke II</u>, 820 F.Supp.2d at 832-33; <u>Schilke</u>
<u>v. Wachovia Mortgage, FSB</u>, 758 F.Supp.2d 549, 556-57 (finding both
deceptive practices and breach of contract claims preempted for
same reason); <u>See also</u> <u>Tinsley v. OneWest Bank, FSB</u>, No. 3:13-

1  23241, 2014 WL 3700456 at *10 (S.D.W.Va. July 24,2014) (denying

2  leave to add nondisclosure-related kickback claims because such

3  claim would be preempted by HOLA and would be futile).[3]

4       This court finds the latter course more appropriate.  To the

5  extent the Dequtis court's decision was based on its reluctance to

6  find rules of general applicability preempted, that approach

7  conflicts with binding precedent in Silvas, wherein the "Ninth

8  Circuit drew no distinction between a law of general applicability

9  and one specifically designed to regulate savings associations."

10 Munoz, 567 F.Supp.2d at 1163.  The Silvas court also looked not to

11 the generally applicable law itself, but rather to the law "as

12 applied" under the particular circumstances of the case.  Silvas,

13 514 F.3d at 1006, 1008; See also Schilke, 758 F.Supp.2d at 556-57

14 ("The question of whether a contract claim is or is not preempted .

15 . . turns on the conduct at issue, not the label given to the

16 putative cause of action." (citing In re Ocwen, 491 F.3d 638, 646

17 (7th Cir. 2007)).  Here, because Plaintiff's specific claims fall

18 under 12 C.F.R. §560.2(b), the analysis goes no further.[4]  HOLA

19 preempts Plaintiff's state law claims.

20

21      [3] Shilke and Schilke II found force-placed insurance claims
22 preempted under 12 C.F.R. § 560.2(b)(2), (b)(5), and (b)(9).
   Tinsley found similar claims preempted under 12 C.F.R.
23 §560.2(b)(9).

24      [4] As even the Gibson court acknowledged, the OTS itself has
   opined that force-placed insurance claims similar to Plaintiff's
25 are preempted.  Gibson, 103 Cal.App.4th at 1305; see also OTS Chief
   Counsel Letter, P-99-3. 1999 WL 413698 (Mar. 10, 1999) ("[S]tate
26 laws regarding the ability of a federal savings association to
   require insurance for its collateral are preempted by federal
27 law.").  The Gibson court concluded, however, that claims regarding
   a servicer's duty to mitigate the costs of force-placed insurance
28 were materially different from claims based on undisclosed
   commissions.  Gibson, 103 Cal.App.4th at 1305

B.   RICO Claims

Plaintiff brings two claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act.  The RICO Act provides for both criminal and civil liability for acts of criminal organizations. See Odom v. Microsoft Corp., 486 F.3d 541, 545 (9th Cir. 2007); 18 U.S.C. § 1961, et seq.  To state a RICO claim under § 1962, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).  An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activity" includes "any act indictable under" any of several criminal statutes.  18 U.S.C. § 1961(1).

A "pattern" "requires the commission of at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5). Although two predicate acts are needed for a pattern, "[t]he Supreme Court has concluded that Congress had a 'fairly flexible concept of a pattern in mind.'" United States v. Freeman, 6 F.3d 586, 596 (9th Cir. 1993) (quoting H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989)). A plaintiff "must show that the racketeering predicates are related, and that they amount to or pose an [implicit or explicit] threat of continued criminal activity." H.J., 492 U.S. at 239 (emphasis in original). Additionally, "[c]ausation lies at the heart of a civil RICO claim." Poulos v. Caesars World, Inc., 379 F.3d 654, 664 (9th Cir. 2004). "[A] plaintiff must show not only that the defendant's violation was a 'but for' cause of his injury, but that it was the

1  proximate cause as well." <u>Forsyth</u>, 114 F.3d at 1481. "This requires

2  a showing of a direct relationship between the injurious conduct

3  alleged and the injury asserted" and "a concrete financial loss."

4  <u>Id.</u>

5          1.   Honest Services Fraud

6      Plaintiff's RICO claims are based upon alleged honest services

7  fraud and mail fraud, and a conspiracy to commit those frauds.[5]

8  <u>See</u> 18 U.S.C. §§ 1961, 1962(c), 1962(d), 1346.  Honest services

9  fraud applies only to cases involving bribery or kickback schemes

10 in violation of a fiduciary duty.  <u>United States v. Milovanovic</u>,

11 6748 F.3d 713 at 721 (9th Cir. 2012) (citing <u>Skilling v. United

12 States</u>, 561 U.S. 358, 365, 408-409 (2010)).  The requisite

13 fiduciary relationship need not be formal, and "extends to a

14 trusting relationship in which one party acts for the benefit of

15 another and induces the trusting party to relax the care and

16 vigilance which it would ordinarily exercise." <u>Id.</u> at 724.

17     Here, Plaintiff appears to contend that Plaintiff and OneWest

18 shared a fiduciary relationship by dint of OneWest's control over

19 Plaintiff's escrow account and discretion to determine the amount

20 of insurance necessary. (Dkt. 50 at 14.)  Plaintiff argues that

21 she "had the right to trust that OneWest would not abuse its

22 discretion under the contract by engaging in unauthorized acts of

23 self-dealing." (<u>Id.</u>)  Although Plaintiff asserts that numerous

24 courts have found the existence of a fiduciary relationship under

25 similar facts, she does not cite, nor is the court aware of, any

26

27     [5] Although Plaintiff's Complaint makes some reference to wire
28 fraud, neither the Complaint nor Plaintiff's oppositions make any
   reference to wire fraud.  <u>See</u> 18 U.S.C. § 1343.

courts that have done so under California law.  To the contrary,
courts have regularly held that, under California law, a borrower-
lender relationship does not create a fiduciary duty.  See, e.g.,
Walters v. Fidelity Mortg. of California, 730 F.Supp.2d 1185, 1205
(E.D. Cal. 2010).  Courts have applied this principle to
allegations of misallocations from escrow accounts as well.  See,
e.g. Palestini v. Homecomings Financial, LLC, No. 10CV1049-MMA,
2010 WL 3339459 at *5 (S.D. Cal. Aug. 23, 2010) (holding escrowee
defendant to be no more than a "mere lender of money" (quoting
Nymark v. Heart Fed. Savings & Loan Ass'n, 231 Cal.App.3d 1089,
1096 (1991)).

Plaintiff's arguments here are identical to those raised in
Perryman v. Litton Loan Servicing, LP, No. 14-cv-2261-JST, 2014 WL
4954674 (N.D. Cal. Oct. 1, 2014).  As the Perryman court explained,
the fact that an informal fiduciary relationship can sustain an
honest services fraud claim does not mean that the type of
relationship here is sufficient.  The court further explained that
the plaintiff "did not hire the mortgage servicers, even
indirectly, to serve as agents of her interest.  They certainly did
not owe her the type of legal duty of loyalty comparable to that
owed by an officer or employee to a private entity." Perryman,
2014 WL 4954674 at *15 (internal quotation and citation omitted).
This court agrees.  Further, as stated by the Perryman court,
Plaintiff's theory might elevate every contractual relationship to
a fiduciary one.  Plaintiff's honest services fraud claim is
therefore dismissed.

///

///

2.   Mail Fraud

The elements of mail fraud are (1) the formation of a scheme
to defraud, (2) the use of the mails in furtherance of that scheme,
and (3) the specific intent to defraud.  Eclectic Properties East,
LLC v. Marcus & Millichap Co., 751 F.3d 990, 997 (9th Cir. 2014).
Defendants primarily argue that Plaintiff has not alleged the
existence of a fraudulent scheme or the intent to defraud.  In
response, Plaintiff focuses largely on the second element, use of
the mails.  (Dkt. 48 at 8-9.)  The allegations that ASIC sent
letters on behalf of OneWest informing Plaintiff of the impending
force-placement of insurance and that OneWest then sent letters
requiring Plaintiff to make additional escrow payments are,
however, not material to Defendants' argument that, essentially,
there are no allegations of misrepresentation or fraud here.

Plaintiffs respond that they need not allege any specific
misrepresentation in the context of an allegation of honest
services fraud.  (Dkt. 48 at 9.)  As discussed above, however,
Plaintiff has not alleged a viable honest services fraud claim.
Even putting that issue aside, and assuming that a scheme to
defraud can be shown even in the absence of any misrepresentations,
Plaintiff still fails to plausibly allege any fraudulent scheme or
intent.[6]  A scheme to defraud requires at least some nondisclosure
in violation of an independent duty to disclose or fraudulent
omission reasonably calculated to deceive.  Gustafson v. BAC Home
Loans Servicing, LP, No. SACV 11-915-JST, 2012 WL 7051318 at *6
(C.D. Cal. Dec. 20, 2012).  The Gustafson court, addressing

_____

[6] See United States v. Woods, 335 F.3d 993, 998-99 (9th Cir. 2003).

12

1   allegations similar to those brought here, concluded that explicit

2   disclosures in the deed and in warning letters to the borrower that

3   force-placed insurance might be more expensive, and that the

4   servicer might receive compensation, were incompatible with

5   allegations of a scheme intended to deceive.  Id.; See also

6   Tinsley, 2014 WL 3700456 at *10 (finding that similar kickback and

7   nondisclosure claims would be futile).

8        This court agrees.  Plaintiff refers to statements in warning

9   letters that OneWest "may obtain additional flood insurance," would

10  "proceed with obtaining the additional flood insurance," and "may

11  receive compensation" as if to suggest that the word "obtain" is

12  misleading because OneWest did not have to exert much effort to

13  find insurance on Plaintiff's behalf and that "may" was misleading

14  because OneWest knew it would definitely receive compensation.

15  (Dkt. 48 at 9-10 (emphases original, citing Declaration of Ronald

16  Wilson, Exs. A-C).)  This tortured interpretation of relatively

17  straightforward language cannot plausibly be read as evincing

18  fraudulent intent.  Plaintiff's mail fraud claim is therefore

19  dismissed.

20  **IV.  Conclusion**

21       For the reasons stated above, Defendants' Motions to Dismiss

22  are GRANTED.  Plaintiff has not adequately alleged a RICO

23  violation.  Plaintiff's state law claims are preempted.  Because

24  amendment would be futile, Plaintiff's claims are dismissed with

25  prejudice.

26   IT IS SO ORDERED.

27  Dated: March 18, 2015

28

                                      DEAN D. PREGERSON
                                      United States District Judge